NEW YORK LIFE INS. CO. v. JACOB et al.

No. 8440.

District Court, E. D. Michigan, S. D.

March 4, 1940.

Armstrong, Weadock, Essery & Helm, of Detroit, Mich., for plaintiff.

Friedman, Mcyers & Keys, of Detroit, Mich., for defendants.

TUTTLE, District Judge.

The Court, having considered the evidence introduced by both parties upon the issues presented, makes the following findings of fact:

1. That on August 3, 1936, the defendant, Saul E. Jacob, made written application to the plaintiff company, through the latter's soliciting agent, S. J. Wayburn, for two life insurance policies, each in the amount of $5,000 on plaintiff's Family Income 15 year period plan.

2. That on August 4, 1936, said defendant Saul E. Jacob was examined by plaintiff's medical examiner, Dr. Fred W. Thomas, who wrote the answers to the questions set forth in Part II of said application. Whereupon said defendant Saul E. Jacob duly signed said Part II of said application.

3. That said Part II of said application contained, among other things, the following questions:

"7A Have you ever had any accident or injury or undergone any surgical operation?

"7B Have you ever been under observation or treatment in any hospital, asylum or sanitarium?"

to each of which questions said defendant Saul E. Jacob answered, "Yes," with the further disclosure that he had had a biopsy of the groin gland at Harper Hospital, Detroit, Michigan, five years previously, and that he had undergone general X-ray treatments at said hospital, as appears in said Part II of said application.

4. That said Part II of said application further contained the following question:

"11 What physicians, or practitioners, if any, not named above, have you consulted or been examined or treated by within the past five years?"

in response to which said defendant Saul E. Jacob disclosed that in 1930 he had been treated by Dr. Willard Mayer of Detroit, Michigan, for a swelling of the glands of the neck, and that he had received generalized X-ray treatments at Harper Hospital, Detroit, Michigan, therefor, as appears in said Part II of said application.

5. That said written application, consisting of Parts I and II was sent to the Home Office of the plaintiff company in New York and on August 7, 1936, was considered for action by Dr. Edward J. Campbell, one of the medical directors of the plaintiff company. Said Dr. Campbell, after duly considering the case, declined to approve the issuance of the policies applied for on a standard rate basis, but approved the issuance of said policies on a sub-standard or rated-up basis because of the information disclosed in Part II of said application hereinbefore mentioned, and because of the further information in the form of a letter received by said medical director in September, 1934, from Dr. Willard Mayer of Detroit, Michigan (in connection with an application for insurance by said Saul E. Jacob for another policy which was never delivered and not involved herein), to the effect that the defendant Saul E. Jacob's condition in 1930 had been diagnosed as hyper-plastic tuberculosis of the glands; that said Jacob had been given X-ray treatments, and that he had made an excellent recovery. Dr. Mayer also stated therein to the plaintiff company that he had not examined said Saul E. Jacob for three or four years and that he therefore knew nothing of his then physical condition.

6. That the plaintiff company recommended the issuance of the said Family Income policies on a sub-standard or rated-up basis to enable the plaintiff company to obtain a premium commensurate with the increased risk in insuring said Saul E. Jacob; that said plaintiff company charged said Saul E. Jacob a premium based upon a ten year advance in age, and that the plaintiff company by such action recognized what was quite clearly disclosed, namely, that said Saul E. Jacob was not in sound health.

7. That said two $5,000 Family Income policies issued on said sub-standard or rated-up basis were sent from the plaintiff company's Home Office in New York to the company's Detroit Branch Office on August 11, 1936; that upon their arrival in Detroit on August 12, 1936, the plaintiff company's soliciting agent, S. J. Wayburn, attempted to deliver said policies and made several efforts to do so, but that on August 19, 1936, the defendant Saul E. Jacob declined to accept said policies because they had been rated-up and the policies were returned to the Home Office of the company and destroyed in accordance with the company's practice.

8. That when the defendant Saul E. Jacob declined to accept said Family Income policies, the parties were then left

without any bargain pending; that the plaintiff company's soliciting agent desiring to effectuate a sale of insurance to said Saul E. Jacob, and with the view of trying to work out a set of policies that might be acceptable to said Saul E. Jacob during the early part of September, 1936, at a convention of the agents and officers of the company in Hot Springs, Virginia, discussed the case with an official of the plaintiff company, who suggested that the soliciting agent attempt to sell said Saul E. Jacob two $10,000 life insurance policies on plaintiff's Endowment at age 85 plan; that on September 4, 1936, said soliciting agent, on his own initiative, without having discussed the matter with said Saul E. Jacob, and without the latter's knowledge or authority, sent the plaintiff's Home Office the following telegram from Hot Springs, Virginia, viz.:

"Please issue alternate twenty thousand endowment at age eighty-five on Saul E. Jacob age thirty-nine would like it in Detroit by Tuesday if possible now have family income for delivery issue two ten thousand policies premiums arranged same as family income."

9. That upon receipt of said telegram, the Home Office of the plaintiff company (without any written application therefor from said Saul E. Jacob, and without the latter's consent or authority) immediately approved the issuance of two $10,000 Endowment at age 85 policies on a rated-up basis, and on September 8, 1936, said policies were sent to the Detroit Branch office for delivery. At the time said policies were sent to Detroit, the Home Office of the plaintiff company also attached to each of said Endowment at age 85 policies photostatic copies of the original application which said Saul E. Jacob had signed on August 3, 1936, for the two $5,000 Family Income 15 year period policies; that the plaintiff company, in attaching photostatic copies of said application to the Endowment at age 85 policies, did so without the knowledge or consent of said Saul E. Jacob; that at the same time the plaintiff company also sent certain "amendment forms" to the Detroit Branch which bore the date September 8, 1936, and which purported to amend the original application of said Saul E. Jacob of August 3, 1936 by changing the plan of insurance on each policy to the Endowment at age 85 plan, and by increasing the amount of insurance on each policy from $5,000 to $10,000. Said amendment forms were not attached to the Endowment at age 85 policies at that time or at any other time.

10. That said two $10,000 Endowment at age 85 policies and said amendment forms arrived at the Detroit Branch on September 9, 1936, at which time said Saul E. Jacob had no knowledge that he was going to get said policies or any other policies from the plaintiff company. Thereafter, the soliciting agent made efforts to sell said policies to said Saul E. Jacob and on September 19, 1936, succeeded in delivering said two $10,000 Endowment at age 85 policies to said Saul E. Jacob, at which time the annual premiums on a rated-up basis were paid by said Jacob. On said date, said Saul E. Jacob also signed the amendment forms hereinbefore mentioned, which forms were subsequently forwarded to the Home Office of the plaintiff company; that the omission to attach said amendment forms to the $10,000 Endowment at age 85 policies was due solely to the fault of the agents of the plaintiff company, and without any fraud or conniving on the part of the insured.

11. That said two $10,000 Endowment at age 85 policies were received by said Saul E. Jacob in good faith and without any intention on his part of deceiving or defrauding the plaintiff company.

12. That said Saul E. Jacob in Part II of the original application for the two $5,000 Family Income policies, failed to state that he had within the five-year period previous to the date of said application, consulted a Dr. Marwil of Detroit, Michigan, for a cold, and a Dr. Stern of the same place with respect to the tubercular condition of the glands which said Jacob had in 1930, and of which the plaintiff company had knowledge, as hereinbefore set forth in paragraph 5, supra.

13. That the failure of said Saul E. Jacob to disclose said two consultations was not in any way material to the acceptance of the risk or the hazard assumed by the plaintiff company.

14. That said Saul E. Jacob did not have Hodgkins disease as claimed by the plaintiff.

15. That on September 11 and 18, 1936, said Saul E. Jacob went to the Ford Hospital at Detroit, Michigan for examination and was examined by several doctors at said hospital, to wit: Doctors Venema, Hurst and Fitzgerald.

16. That on December 2, 1936, said Saul E. Jacob requested the plaintiff company to make the premiums on the two $10,000 Endowment at age 85 policies payable on a quarterly annual basis. The plaintiff company acquiesced in said request, recalled the two original $10,000 Endowment at age 85 policies held by said Jacob, and issued in lieu thereof two brand new $10,000 Endowment at age 85 policies which were identical with the original Endowment policies that had been recalled, except that the new policies were payable on a quarterly annual basis. At about the time of the issuance of said new policies the plaintiff company caused said Saul E. Jacob to execute a form of amendment dated December 7, 1936, purporting to amend the original application of August 3, 1936, for the two $5,000 Family Income policies with reference to the time and manner of paying the premiums on the insurance described, in said application. A copy of said amendment dated December 7, 1936, as well as a photostatic copy of said application of August 3, 1936, was attached to each of said new Endowment at age 85 policies, which are the policies in suit.

17. That on March 25, 1938, said Saul E. Jacob filed a written claim with the plaintiff company for disability under an old policy held by him with the plaintiff company, (not involved in this suit); that upon receipt of said claim for disability, the plaintiff company made an investigation in the course of which it learned that said Jacob had visited Ford Hospital in Detroit, Michigan, on September 11 and 18, 1936 and that said Saul E. Jacob had consulted Doctors Marwil and Stern prior to August 4, 1936, as hereinbefore set forth in paragraph 12, supra.

18. That after said information had been received by the plaintiff company, the latter, through its Detroit Branch office, notified the assured that the May premiums on said Endowment at age 85 policies would be due on May 10, 1938; that on May 10, 1938, the plaintiff company received and accepted the regular quarterly premium payments on said Endowment policies and issued to the assured its usual receipt therefor.

19. That on May 23, 1938, the plaintiff company sent a letter to said Saul E. Jacob and the beneficiaries named in the policies in suit, notifying them the company elected to rescind the policies. In said letter the plaintiff company also enclosed checks covering the total amount of premiums that had been paid up to that time on said policies, together with interest thereon, and tendered said checks to the defendants in this cause. Said tendered checks were not accepted by the defendants and were returned to the plaintiff company. Tenders thereof were renewed by plaintiff upon the hearing of said cause and again refused by the defendants.

### Conclusions of Law.

Whereupon, the Court, after hearing the legal arguments made by counsel for both parties upon the questions involved, makes the following conclusions of law:

1. That although the application of August 3, 1936 for the two $5,000 Family Income policies was attached to the Endowment at age 85 policies, the policies in suit, the plaintiff company has no right to rely upon any of the matters set forth in said application

(a) Because said application was for two policies that were entirely different, both in plan and in amount, from the policies in suit;

(b) Because the assured never authorized the plaintiff company to use said application of August 3, 1936, as the basis for issuing the two $10,000 Endowment at age 85 policies in suit, and

(c) Because said two $10,000 Endowment at age 85 policies were not issued upon said application of August 3, 1936.

2. That although the plaintiff company itself recognized the necessity of obtaining the assured's consent to permit the plaintiff company to use and rely upon said application of August 3, 1936, in connection with the issuance of the two Endowment at age 85 policies, by causing the assured to execute the amendment forms dated September 8, 1936, said amendment forms were not attached to nor made a part of said Endowment at age 85 policies and therefore under Section 12425 of the Compiled Laws of Michigan of 1929 said amendment forms must be excluded from consideration in this case.

3. That in legal contemplation, the two $10,000 Endowment at age 85 policies in suit must be regarded as if they were issued and delivered to the assured without any written application having been made therefor, which fact, however, does not prevent said policies from being binding and effective contracts between the parties.

4. That even if the application of August 3, 1936, can be considered as part of the policies in suit, there was no breach or violation of the clause in the application appearing in Part I thereof, which provides:

"It is mutually agreed as follows:

"1. That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime, and then only if the applicant has not consulted or been treated by any physician since his medical examination.", for the following reasons:

(a) Because in the construction of insurance contracts, any doubt in the meaning of the language therein must be construed in favor of the assured.

(b) Because said clause, in speaking of the "insurance hereby applied for", must be construed as having reference to the two $5,000 Family Income policies mentioned in items 2 and 3 of said application of August 3, 1936.

(c) Because the period of time intended to be covered in the clause relating to consultations with physicians between the medical examination and the delivery of the policy must be construed as referring to the period between August 4, 1936, the date of the medical examination for the two $5,-000 Family Income policies, and August 19, 1936, the date of the attempted delivery of said policies, and cannot be construed to extend that period so as to make the delivery date of any other policy that might be issued in the future, the outer limit of that period.

5. That even if the application of August 3, 1936, can be considered as part of the policies in suit, there was no claim or showing by the plaintiff company that said Saul E. Jacob in answering the questions in Part II of said application, made any false statements therein with intent to deceive or defraud the plaintiff company.

6. That the omission of said Saul E. Jacob to disclose in Part II of said application of August 3, 1936, that within the five-year period previous thereto he had consulted Dr. Marwil for a cold and Dr. Stern with reference to his previous tubercular condition of the glands, does not entitle the plaintiff company to rescind the policies in suit under Section 12444 of the Compiled Laws of Michigan of 1929 and the cases construing said statute, inasmuch as there was no showing by the plaintiff company that either of these omissions materially affected the acceptance of the risk or the hazard assumed by said company.

7. That the amendment of December 7, 1936, which is attached to the policies in suit and which purported to amend the original application of August 3, 1936, for the two $5,000 Family Income policies with reference to the date and manner of paying the premiums on said Family Income policies is of no force and effect

(a) Because said Family Income policies never became effective and are not involved in this litigation, and

(b) Because said purported amendment did not authorize the plaintiff company to rely upon said application of August 3, 1936, in connection with the issuance of the two $10,000 Endowment at age 85 policies in suit.

8. For the foregoing reasons, the Court holds that the plaintiff is not entitled to any of the relief prayed for in its complaint, and the complaint is hereby dismissed.

9. In view of the foregoing, the Court finds it unnecessary to pass upon the following questions which were also raised by counsel for the defendants:

(a) That the anticipatory waiver clause in Part II of the application of August 3, 1936, is void and contrary to the public policy of the State of Michigan as declared in the Michigan decisions, and that under the rule in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A. L.R. 1487, the Federal courts are bound to follow the Michigan decisions on this question.

(b) That the medical testimony offered at the trial is wholly incompetent and privileged under Section 14216 of the Compiled Laws of Michigan of 1929.

(c) That the plaintiff company had full knowledge of the matters relied upon in its complaint as grounds for cancellation of the policies in suit prior to May, 1938, but nevertheless demanded payment of the May 10, 1938, quarterly premiums and unconditionally accepted the premium which became due May 10, 1938, on said policies, and that therefore the plaintiff waived its rights, if any, to cancel said policies on said grounds.